## Smallwood v. Robinson, et al., Trustees.

(Decided October 14, 1924.)

### Appeal from Pike Circuit Court.

1. Religious Societies—Abandonment and Sale of Property Held Governed by Provisions and Discipline of Church.—Where property was conveyed to trustees of Methodist Episcopal Church, subject to the discipline, usage, and ministerial appointments of that church, held, that such property could not be abandoned and sold by trustees, except in compliance with provisions of discipline of church, and that thereunder order and consent by quarterly conference to abandonment and sale were necessary.

2. Religious Societies—Mere Nonuser Held Not to Constitute Abandonment of Church Warranting Sale by Trustees.—Nonuser and failure to maintain services in church, or keep up premises, was strong evidence of abandonment, but was not evidence that quarterly conference of Methodist Episcopal Church, which had supervision of property, had abandoned it so as to warrant its sale by trustees.

J. M. BOLLING for appellant.

J. E. CHILDERS for appellees.

Opinion of the Court by Judge McCandless—Affirming.

On the 16th of April, 1918, W. H. Smallwood, Sophie Bolling and H. D. Smallwood, as trustees, conveyed to S. K. Smallwood a church building and lot at Dorton, Pike county, Kentucky, in consideration of the sum of $250.00.

Thereafter on the 14th day of June, 1918, the quarterly conference of the territory in which Dorton is located appointed additional trustees for that property, and subsequently the other members of the congregation, in writing, authorized and directed them to bring suit to recover it; this was done, resulting in a judgment for plaintiffs, and from this the defendant has appealed.

The original deed to the property was executed by W. H. Smallwood to E. R. Smallwood and Eli Ramey, trustees, on September 29, 1894. In the habendum clause the following language is used:

"To have and to hold the same unto the said parties of the second part, their successors and assigns in trust for the use and benefit of the ministry and membership of the Methodist Episcopal Church in the U. S. A. subject to the discipline, usage and ministerial appointments of that church, and if sold the proceeds shall be disposed of and used in accordance with the provisions of the discipline of said Methodist Episcopal Church."

As read into the record those provisions are:

"Each board of trustees of our property shall consist of not less than three nor more than nine persons, each of whom shall be not less than twenty-one years of age and two-thirds of whom shall be members of the Methodist Episcopal Church.

"In all cases where the law of the state or territory are fixed, the mode of election and qualification of voters, and trustees or any other matter pertaining to their election let these requirements be carefully observed. In all other cases the trustees may be elected by ballot by members of the church not less than 21 years of age, at a meeting called for that purpose at a day near to and not later than the fourth quarterly conference. Ten or more members of the required age must unite in a written request for such a meeting and shall present it to the pastor; if there be no pastor, to the district superintendent,

who shall thereupon fix the date and place of election, and notice thereof shall be given publicly from the pulpit for two Sundays prior to the date fixed. When no such written request shall have been made by the members, the trustees shall be elected annually by the fourth quarterly conference of the church. One-third of the trustees may be elected each year to serve for three years.

Section 362. "In all cases where church property is abandoned or no longer used for the purposes originally designed, it shall be the duty of the trustees, if any remain, to sell such property and pay over the proceeds to the annual conference within the bounds of which it is located."

Plaintiffs' evidence is to the effect that under the church discipline the quarterly conference alone had authority to determine whether or not the church had abandoned the property and to authorize a sale; and that the trustees could not act in the matter until they had procured an order to that effect from the quarterly conference and approval of the pastor and district superintendent. Services had not been regularly held at this place for several years, but it was included in the circuit given to different pastors, and the conference had been holding it, anticipating a possible development in the neighborhood; that no question as to its sale had ever arisen at the quarterly conference, nor had the superintendent been approached on the subject at all, and that he repudiated the sale as soon as he learned of it; that the provisions of the discipline authorizing the election of trustees by a vote of the membership, upon a petition signed by ten of their number asking such election, is seldom exercised in practice, and that the general and usual way of electing such trustees is at the fourth annual quarterly conference; this method was followed in this instance.

Further, that at the time of the sale the property was of the value of $1,000.00 or more; that the trustees did not consult any other member of the congregation before making the sale; that of the trustees executing the deed, H. D. Smallwood, a brother of defendant, resided in Pike county; W. H. Smallwood is defendant's father, and Sophie Bolling is his aunt; that both of them resided in Lincoln county, 200 miles distant, W. H. Smallwood having lived there for the past seven or eight years; that while the property is going down, and has been used

very little during that period of time, it is still intact, and the members are all desirous of retaining it; that as a matter of fact, a coal development company was located at this place just before defendant's purchase, and he took advantage of the situation of purchasing this property from his relatives at a fraction of its value.

On the other hand, defendant's witnesses testify that he gave full value for the land, and intimate very strongly that this is but an attempt of the coal company to procure possession of the property; that at the time the building was erected there was a working congregation, but that its members died or moved away, and the church went down; that since 1908 there has been no regular services, and in the past few years the church has been finally abandoned, and the building has been neglected and is sadly out of repair.

W. H. Smallwood testifies that he conveyed the land, assisted in the construction of the building, and that it was maintained largely through his efforts until his removal in 19—; that he was recording secretary and still has possession of the books showing the membership of the church, and that in April, 1918, there were only two members remaining, aside from the then trustees who joined in the deed; that W. H. Smallwood, E. R. Smallwood and Eli Ramey were elected trustees in 1894; that Ramey withdrew and H. B. Smallwood was appointed in his stead, and afterward Sophie Bolling was appointed, and those three were confirmed as trustees at each annual conference thereafter so long as meetings were held at the church; that at the time of the execution of the deed he called a meeting of the trustees regularly, and that the deed was executd in accordance with the provisions of the discipline. The other trustees corroborated his testimony. Before the purchase defendant and his attorney visited the district superintendent and suggested the purchase to him, and he referred them to the trustees, giving his consent that such a sale might be made and the money deposited to the credit of the Methodist Church of Pikeville, which was at the time involved in debt, and which they did.

Many others testified on both sides, making several hundred pages of record. A question is also raised as to the legal capacity of the present trustees to maintain this action. It seems, however, that two of them are members of the Methodist Episcopal Church, and all are over the

age of twenty-one years, and that they were appointed at a quarterly conference having jurisdiction of that matter, and have been authorized by the church to take such action, hence this question must be determined in their favor.

Assuming that the grantors in the deed to defendant were at the time of the execution of the deed the legal trustees of the church, and passing the *bona fides* of the transaction, in which they sold the church to one of their family without notice to any of the other members of the congregation; also passing the question of the value of the church at the time of sale, can it be said that the church building had been abandoned in the sense that word is used in the discipline?

In this respect it seems to us that section 362, authorizing a sale by the trustees of abandoned property, is consistent with the other provisions placing the supervision of such property in the quarterly conference and requiring its order and consent to abandonment in order to authorize a sale by the trustees. Such a construction harmonizes the various provisions quoted, and as the deed relied upon provided that the property should be held and maintained in accordance with the discipline, the provisions of the latter instrument should prevail.

It is true that there is testimony that these provisions were waived by the district superintendent. This was not pleaded, however, and is denied by him.

The nonuser and failure to maintain services or keep up the premises are strong evidence of abandonment, but there is no evidence that the conference contemplated this, and to the contrary several testify that the property was being held for development; that the church had always been included in the circuit, and a pastor assigned, and it was testified to by the one assigned to the work in 1918 that he was detained by this litigation.

On the whole, it does not seem the trustees were authorized to assume the church was abandoned and to sell it against the will and without the consent of the conference.

Such being the opinion of the lower court, the judgment is affirmed.